LONG *versus* LEWIS, use, &c.

It is not competent for a Court of Law, on motion, to order the sheriff to retain, out of money collected for a plaintiff, the charges of an attorney for *commisson*, or *compensation for extra services*—not being costs or taxed fees.

In error from Madison County Court.

So much of this case as involves the point decided, shows that Lewis for the use of Sanders, moved the County Court of Madison county, for an order directing the sheriff to retain certain fees charged by him as attorney for Long, out of money then in the sheriff's hands, belonging to the plaintiff in error. Lewis had managed several suits for Long, in the Inferior and Supreme Courts, and the motion was predicated on a claim for *extra compensation*, being no part of the taxable fees. On a final hearing, the Court gave judgment on the motion, without the intervention of a jury, and this, with many other errors which appear in the opinion of the Court, were assigned for its reversal.

SAFFOLD, J.—At February term, 1828, of Madison County Court, Lewis, for Sanders' use, moved the Court to order the sheriff to detain, out of the amount of the execution in the case of *Long* vs. *McBroom*, former sheriff, the fees claimed by Lewis as attorney for Long, in the case of the *latter* vs. *Turner* in that Court; in which there had been an affirmance of judgment in the Supreme Court, and for satisfaction of part whereof the judgment against McBroom had been obtained. The fees claimed were for obtaining the affirmance of said judgment. The Court

continued the motion, but ordered the sheriff to *detain* two hundred and fifty dollars, until judgment on the motion, unless Long should give bond to Lewis for Sanders' use, with condition to pay the two hundred and fifty dollars, or what should be adjudged on the motion.

At August term, 1829, on the hearing of the motion, Long's attorney insisted, there should be a declaration, or statement of the facts on which judgment was sought, but the Court refused to compel it, to which Long excepted.

The facts having been suggested, on which, in pursuance of the motion judgment was sought. Long controverted them, and prayed a jury to determine them; this request, the Court also refused, and to which a further exception was taken.

It was conceded, that the fees claimed, formed no part of the costs taxed, or which could be taxed or embraced by the judgments, (*Long* vs. *Turner*,) but were one moiety of the damages of affirmance in those two cases claimed by Lewis, as Long's attorney, for obtaining the same, without any express contract betwixt him and Long. Therefore, Long insisted, the Court could not take jurisdiction, but the Court proceeded to hear and adjudge; and to this exception was also taken.

The facts proved were, that Lewis, as Long's attorney, obtained two judgments against Turner, for two thousand four hundred and seventeen dollars, and two thousand three hundred and thirteen dollars—writs of error were prosecuted, and at December term 1823, of the Supreme Court, J. M. Taylor, Esq. for Lewis, obtained affirmances with ten per cent. damages according to statute, a moiety of which

damages was one hundred and seventy-seven dollars and eighty one cents. Executions on the affirmed judgments were returned to January term 1825, " satisfied."

On the 25th August 1826, Sanders filed his bill in Madison Circuit Court, against Lewis, Long and McBroom, claiming Lewis' fees as his assignee, being the sum of one hundred and seventy seven dollars eighty one cents, aforesaid, and praying an injunction and decree for the same. Lewis' answer, admitted the transfer to Sanders and his right, stated his contract with Long to have been a written one, allowing him two and a half per cent. on the amount he should collect and receive, and which had been paid him; that there had been no further stipulation, but that writs of error were not contemplated, and relied on the practice for an additional fee of one half of the damages on the affirmance of the judgments. At November Term, 1827, the bill was *dismissed.* For what reason, or on what ground, the bill was dismissed, does not appear. The facts respecting the bill, were given in evidence by Long, in defence of the motion, to avail himself of Lewis' answer, which admitted he *was to make the collection for two and a half per cent. and that he had received the same &c.* Lewis' receipt for the two and a half per cent. was also produced; and it was further proved, that after the affirmances, Long collected from the sheriff about two thousand dollars; that his agent made repeated visits from Tennessee, in order to get the residue out of the hands of Sanders, the deputy of McBroom, and from first to last Lewis was absent, having removed; that for the want of his original attorney, he was under the necessity of em-

ploying and paying another attorney, (Mr. Craighead,) who obtained the judgment against McBroom, for about one thousand four hundred dollars, the residue collected by Sanders.

The Court also heard proof of the custom of the Northern bar, in support of the charge of half the damages of affirmance, &c., to which objection was also made.

The judgment of the County Court was that the restraining order be rescinded.   That Lewis for Sanders' use recover of Neal, sheriff, one hundred and seventy seven dollars and eighty one cents for Lewis' services &c., out of which the costs were to be paid; and that the balance of the said two hundred and fifty dollars, being seventy two dollars. nineteen cents be paid to Long: and for said sums executions were awarded.

. It may be premised respecting the bill filed by Sanders against Lewis, Long and McBroom, the proceedings thereon and its dismissal; that in as much as the principles or grounds of the decision in chancery, were not made a part of this record, and do not appear to have been relied on as a bar to the success of this motion; as the bill may have been dismissed on the ground that it involved a subject exclusively of Common Law cognizance, and the effect of the decree is not assigned as any cause of error in this Court, the chancery decision can have no material influence in the determination of this case.

But it is assigned for error that the restraining order was irregular—that the refusal of the Court to compel a statement or declaration of the cause of action; and to allow the plaintiff in error the benefit of a trial by jury was illegal.   Also, that it was er-

roneous to entertain summary jurisdiction, to receive the evidence of the usage of the bar; and to give the judgment in question.

The facts of the case, together with the assignments of error, present the question, whether or not it is competent for a Court of law, on motion against the sheriff, and without the intervention of a jury to order the sheriff to detain from the plaintiff, money collected on executions in his favour and pay the same to his attorney in satisfaction of his claim of *commission*, or, *compensation for extra services* in effecting the recovery? And if the competency exists under different circumstances, do not the facts that no specific rate of commission had been agreed on—that the services relied on as the ground of the claim were contested, by the client, and negligence imputed to the attorney—the necessity in this case of deciding the amount due, or whether any thing, from evidence *in pais*, and the defendant's claim of the right of trial by jury, destroy the competency, and deny the summary remedy?

It is material that the claim was not for costs, or any fees that were, or could have been taxed in the bill of costs, or which were in any manner defined by law—such would stand on a different principle; the demand was for additional commissions for extra services by the attorney, for procuring an affirmance of the judgments in this Court; and this after being paid for his services in the Court below, the stipulated rate (two and a half per cent commissions,) for making the collection. There had been no further stipulation, writs of error not having been contemplated at the time of the engagement; but the same having been prosecuted, the attorney relied on the

30

practice and usage of the bar to give him an additional fee of one half of the damages accruing on the affirmance.

As respects the fact of the attorney having been employed in the service for which he claims compensation, and so far as that may be material, it is sufficient to remark that it is not necessary the attorney should be able to prove the original employment; if he can show a recognition of him, by his client, as attorney in the progress of the suit, it is sufficient, *Hotchkiss* vs. *Le Roy.*[a] Nor should I doubt but a continuation of the employment in the defence of a writ of error, and an agreement for extra services, may be implied in a proper case, by a competent tribunal, from the necessity of the service, and the usage of the country. But to do this the tribunal must have authority to draw inferences and decide contested facts.

It is also a rule of law, that if the defendant pay to the plaintiff his debt and costs, after notice from the plaintiff's attorney not to do so, he pays the costs in his own wrong—*Pindar* vs. *Morris,*[b] *Martin* vs. *Hawks.*[c] But this has reference alone to the expenses which by law may be taxed in the bill of costs in favor of the successful party; and is by legal intendment for the benefit of his attorney, and is said to be his measure of compensation, as between him and the party recovering,—*McFarland* vs. *Crary.*[d]

Another established principle, and one more applicable to the case before us is, that the claim which an attorney may have on his client for extra services, or for counsel fees, make no part of the attorney's *lien* upon the taxed costs, or which the Court will protect against the interference of his client—*The People* vs. *Hardenburg.*[e]

[a] 9 Johns. R. 142.

[b] 3 Caine's R. 165.
[c] 15 Johns. R. 405.

[d] 8 Cowen 253.

[e] 8 Johns. R. 335.

That " the right of trial by jury shall be pre-
served," or " shall remain inviolate," is a sacred con-
stitutional guarantee, none will, in terms, deny ; the
only question is as to its application.   By the con-
stitution of the United States it is expressly applied
to all " suits at Common Law, where the value in
controversy exceeds twenty dollars."   By adopting,
substantially, the same language, the convention in
this State must be presumed to have intended the
same degree of protection.   In obedience to this *two
fold* constitutional rule, this Court, as well as most
others in the Union, has repeatedly decided that in
summary proceedings, no less than in a different
mode, against officers and others, where material facts
*in pais* are controverted, and in cases of sufficient
amount, the benefit of trial by jury can not be with-
held.   Believing in this case, that this right has been
violated, we consequently decide that the County
Court erred.

Admitting the principle that an attorney at law,
who has collected and received into his hands mo-
ney for his client, has a right to retain therefrom any
amount of fees, or commissions justly due him for
his services in the same case ;  or if the principle be
so extended as to recognise a *lien* in favour of the
attorney on the evidences of debt or demand for the
prosecution of which he has been retained, until his
fees are paid ;  it does not follow, that, under differ-
ent circumstances, he can, by *mere motion* to the
Court, obtain an order, decree or judgment for the
amount, against his client, or any other person, or of-
ficer, who may hold the money—nor can he place
his assignee in a more favorable attitude.   If the at-
torney have possession of the money collected, or the

evidences of the debt, and the client demands the same, but his attorney refuses, insisting on his right to retain in satisfaction of his fees, or until the same are paid, the client can litigate the right by motion or regular suit, according to the circumstances; if material facts be contested which the Judge is incompetent to decide, an issue may be formed and the facts ascertained by a jury. If the attorney have not the remedy in his own hands, in relation to his claim of commissions or fees, beyond those chargeable in the bill of costs, and his right be contested by his client and payment refused, or if for other cause, it is delayed, the Courts are open to him, and he is entitled to the same remedy, by regular suit, that other creditors may demand.

I would not be understood to say that no remedy exists by which an attorney, or his assignee, can secure his commission, or retaining fee, out of the money collected, and in the hands of the sheriff, or other person, against his client's consent; but if it be admitted, (on which however we express no opinion,) that the remedy exists, in case of the insolvency of the client, or where artifice or fraud has been resorted to with a view to defeat the attorney's claim, it must be by suit in chancery, or at law in the ordinary course : whereby the client shall not be denied a trial by jury, of the contested facts, nor be compelled to have his rights determined by a proceeding against an officer who may have neither inclination or ability to defend them.

Let the judgment and proceedings be reversed.

COLLIER, J.—I concur in reversing the judgment, but dissent from so much of the opinion of the Court

as supposes that the decree in the chancery cause was not a bar to further litigation in regard to the subject matter. It may be true that the bill contained no equity, and should for that cause have been dismissed, but the question is not what should have been done, but what was done. The bill having been dismissed generally, we must understand that the merits of the case were litigated and determined; and hence the decree precludes further controversy in another form.